# Beihl *v.* Martin, Appellant.

*Husband and wife—Estate by entireties—Bankruptcy of husband—Judgments against husband—Liens—Alienations by husband and wife.*

1. Where a husband and wife hold an estate in land by entireties their joint .deed is sufficient to pass title in the land free from the effect of bankruptcy proceedings and judgments against the husband, and free from any contingent interest or ownership therein by the trustee in bankruptcy in the event of the bankrupt surviving his wife.

2. While the expectant interest of husband and wife, where they hold by entireties, may be the subject of lien, and upon the death of either, the lien against the survivor may be enforced, this does not mean that there may be a severance in ownership in any other way than by the death of one or other of the parties, or by voluntary alienation by both. Fleek v. Zillhaver, 117 Pa. 213, distinguished.

3. While the estate by entireties continues it is utterly impossible for either party without the other joining, to sell or assign his or her interest therein, even the expectancy of survivorship.

Argued March 21, 1912. Appeal, No. 119, Jan. T., 1912, by defendant, from judgment of C. P. No. 1, Phila. Co., Sept. T., 1911, No. 3543, for plaintiff on case stated in suit of Ernest H. Beihl and Clara Beihl, his wife, v. William J. Martin. Before FELL, C. J., BROWN, POTTER, ELKIN and STEWART, JJ. Affirmed.

Case stated to determine marketable title to real estate.

The facts are set forth in the case stated as follows:

1. That Ellwood Smith and wife, by deed dated May 20, 1903, and recorded in deed book W. S. V. 139, page

535, etc., and conveyed unto Ernest H. Beihl and Clara L. Beihl, his wife (therein called the grantees—the form of grant being, to wit: "Do grant, bargain, and sell, release and confirm, unto the said grantees, their heirs and assigns"), all that certain lot or piece of ground with the brick messuage or tenement thereon erected, situate on the east side of Fifteenth street......

2. That the habendum in said deed of conveyance provided as follows: "To have and to hold the said lot or piece of ground with the brick messuage or tenement thereon erected, hereditaments and premises hereby granted or mentioned and intended so to be with the appurtenances unto the said grantees their heirs and assigns; to and for the only proper use and behoof of the said grantees their heirs and assigns forever."

3. That by virtue of the said deed of conveyance the plaintiffs were vested with a good and marketable title in fee simple to said premises.

4. That while the plaintiffs were so seized thereof the said Ernest H. Beihl was, on July 2, 1909, adjudged a voluntary bankrupt by the United States District Court for the Eastern District of Pennsylvania, the said Clara L. Beihl not joining in said bankruptcy proceedings nor giving consent thereto, and on July 21, 1909, Charles J. Weiss was elected, and duly qualified, to be trustee in bankruptcy of the estate of Ernest H. Beihl, which trusteeship is still existing—there remaining unpaid an existing indebtedness on the part of the said Ernest H. Beihl of over $14,000.

5. That while the plaintiffs were seized of said premises judgment for $1,307.23 was on July 2, 1909, and another judgment for $373.39 was on July 9, 1909, entered upon the proper index in Philadelphia county against the said Ernest H. Beihl, by creditors who subsequently filed their respective claims, as shown by said judgments, with the referee appointed in the said bankruptcy proceeding.

6. That subsequently in September, 1911, while plaintiffs were seized of said premises in the manner hereinbefore recited, the defendant, William J. Martin, agreed to purchase the same for the price of $6,500, and the plaintiffs agreed with the said defendant that the deed to be delivered by plaintiffs shall convey a good and marketable title unto the defendant William J. Martin and shall vest in him the title to said premises in fee simple, clear of any and all judgments and defects of every kind, and particularly clear of any contingent claim of ownership or interest which might or could be enforced against the said premises subsequent to the proper execution, delivery and recording of said deed unto the said defendant.

The court entered judgment for the plaintiff on the case stated, relying on Meyer's Est., 232 Pa. 89 and 95, and Weiss v. Beihl, 232 Pa. 97.

*Error assigned* was the judgment of the court.

*George P. Rich,* with him *Wm. B. S. Ferguson,* for appellant.—The cases relied upon by the court below fall far short of deciding that a husband who has parted with his interest, either to a purchaser or to his trustee in bankruptcy, or as against whom creditors have obtained judgment, may nevertheless join with his wife in conveying a valid title to a purchaser, free from any liability either to such previous purchaser, trustee in bankruptcy or judgment creditors, in the event of the husband surviving the wife.

The questions involved in this case have been settled by the case of Fleek v. Zillhaver, 117 Pa. 213.

All possible titles, whether vested, contingent or by executory devise, may be taken in execution and sold, provided there be a real interest in the defendant, either legal or equitable: Drake v. Brown, 68 Pa. 223; DeHaas v. Bunn, 2 Pa. 335; Kenyon v. Davis, 219 Pa. 585.

*Harvey Gourley*, for appellees.—The husband and wife have equal estates, but the Act of April 11, 1848, P. L. 536, disables the husband from so encumbering his title as to deprive the wife of the full enjoyment of her title: McCurdy v. Canning, 64 Pa. 39; Gillan v. Dixon, 65 Pa. 395; Holcomb v. People's Sav. Bank, 92 Pa. 338; Dexter v. Billings, 110 Pa. 135; Alles v. Lyon, 216 Pa. 604.

A substitution of another for the husband, destroys the "entirety": Meyer's Est., 232 Pa. 89; Fairchild v. Chastelleux, 1 Pa. 176; Stuckey v. Keefe, 26 Pa. 397; McCurdy v. Canning, 64 Pa. 39; Alles v. Lyons, 216 Pa. 604; Holcomb v. People's Sav. Bank, 92 Pa. 338.

When another steps in her husband's place, to any degree of interest, the "entirety" is reduced to an estate in common, because no one is capable of owning the entirety excepting husband and wife.

OPINION BY MR. JUSTICE STEWART, May 22, 1912:

It may be that because of modern innovations on the common law respecting the property rights of married women, the venerable estate known as estate by entireties has outlived the purpose of its creation and is out of harmony with present conditions. However this may be, if change is desired, it must come through legislative action and not through judicial construction. This estate is too well established and too well defined to be subject to judicial impairment. Recognizing its very anomalous character we have been careful, as all our cases show, to give effect to these peculiar incidents which naturally and logically attach, especially to its chief distinguishing incident which exempts it from the ordinary legal process to which all other estates are subject. Fundamentally the estate rests on the legal unity of husband and wife; it is therefore a unit, not made up of divisible parts subsisting in different natural persons, but is an indivisible whole, vested in two persons actually distinct, yet to legal intendment one and the same. Each is seized of the whole estate from its incep-

tion, and upon the death of one, while the right of survivorship remains to the other, that other takes no new title or estate. "A conveyance to husband and wife creates neither a tenancy in common nor a joint tenancy. The estate of joint tenants is a unit made up of divisible parts; that of husband and wife is also a unit; but it is made up of indivisible parts. In the first case there are several holders of different moieties or portions, and upon the death of either the survivor takes a new estate. He acquires by survivorship the moiety of his deceased co-tenant. In the last case, although there are two natural persons, they are but one person in law, and upon the death of either, the survivor takes no new estate. It is a mere change in the properties of the legal person holding and not an alteration in the estate holden. The loss of an adjunct merely reduces the legal personage holding the estate to an individuality identical with the natural person. The whole estate continues in the survivor the same as it would continue in a corporation after the death of one of the corporators. This has been the settled law for centuries": Stuckey v. Keefe, 26 Pa. 397.

It is this striking peculiarity of the estate—the entirety alike in husband and wife—that operates to exempt it from execution and sale at the suit of a creditor of either separately. The enforcement of such process would be the taking of the property of one to pay the debt of another. But may not the interest of either be seized in satisfaction of his or her appropriate and exclusive debt? Before answering let us clearly understand what is here meant by interest. For convenience of illustration take the case of a husband. Towards everybody in the world except the wife he has exclusive possession during her lifetime, and his right to the enjoyment of the estate during this period may not be interfered with at the suit of his creditor. So much is conceded, and has been expressly decided by this court in a number of cases, notably in McCurdy v. Canning, 64 Pa.

39. With possession denied a purchaser at an enforced
sale during the joint life of the parties to the estate,
what is there to acquire by purchase? Nothing but a
bare expectancy, a chance that the husband may survive
the wife and have the entirety to himself. May that
expectancy be made the subject of a judicial sale? Cer-
tainly never up to this time have we said that it can be.
The case of Fleek v. Zillhaver, 117 Pa. 213, marks the
extremest limit to which we have gone in subjecting es-
tates of this character to demands of separate creditors.
We cannot allow that that case was an attempt to modify
or escape from conditions which up to that time had
been universally recognized as necessarily resulting from
the nature and character of this peculiar estate. On
the contrary, the result there reached can be vindicated
only as it can be shown to be in harmony with these con-
ditions; for it was along lines thought to be entirely con-
sistent with these that the conclusion there expressed
was reached. The controversy there arose after the
death of the wife. During the continuance of the
estate creditors of the husband obtained judgments
against him. Later on husband and wife joined in a
mortgage of the land. Upon survival by the husband
execution was issued on the judgments that had been
obtained against him and the land was sold thereunder.
A sci. fa. on the first mortgage followed, in which the
party holding purchaser at sheriff's sale was served as
terre tenant. The efficiency of the sheriff's sale to pass
title was the question in dispute, and this was the ruling
of the court: "It was that kind of estate (entireties)
which was bound by the lien of the mortgage given by
Mary Holcomb; and it was the same kind of estate
which was bound by the lien of the judgment against
her husband. As against the wife, the mortgage was
undoubtedly the first and indeed the only lien. As
against the husband, the judgment was the first lien
and the mortgage the second, simply because the judg-
ment was obtained before the mortgage was given. Had

the wife survived, the mortgage would certainly have had precedence to the exclusion of the judgment, because the estate bound by the lien of the judgment was defeasible by the death of the husband before the wife. For the same reason, if the husband survived the wife the estate of the latter was divested, and the mortgage only became operative against the husband because he had joined in its execution. But as to him it was not the first lien, he having become subject to a judgment at a time anterior to the giving of the mortgage."

This case stands as authority with respect to what it expressly rules, viz: that the interest of husband and wife where they hold by entireties may be the subject of lien, and that upon the death of either the lien against the survivor may be enforced. It is to be observed that it does not rule that there can be a severance in ownership in any other way than by the death of one or other of the parties, or by voluntary alienation by both. So it will become apparent on a recital of the facts we have here, that the present case falls without the scope of that. Here the estate in the land as originally created continues, and what we have to determine is the capacity of the parties, husband and wife, by their joint deed to convey the interest of both free and discharged of the lien of the husband's judgments. The property was acquired by deed of conveyance to husband and wife in 1903. On the 2nd of July, 1909, the husband, Ernest H. Beihl, by the United States Circuit Court for the Eastern District of Pennsylvania, was adjudged a bankrupt, his wife not being a party to the proceeding or consenting thereto. On the same day several judgments were entered against the husband by creditors who subsequently filed their respective claims with the referee appointed in the bankruptcy proceedings. In September, 1911, Beihl and his wife entered into articles of agreement with William J. Martin, the defendant, whereby for consideration of $6,500 they covenanted to sell and convey the property so above ac-

quired to said Martin, by good and sufficient deed in
fee simple "clear of any and all judgments and de-
fects of every kind, and particularly, clear of any con-
tingent claim of ownership or interest which might or
could be enforced against the said premises." The mat-
ter is submitted on a case stated which provides that if
the court shall be of opinion that a proper deed from
plaintiffs to defendant will convey such title to the said
premises as is stipulated for in the agreement, then
judgment shall be entered for the plaintiff. The fact
that we have here a referee or assignee in bankruptcy
adds nothing to the complications. Any one claiming
an interest in the premises through such an officer
would be in exactly the same position as a purchaser
at sheriff's sale. The same results must follow whether
the attempted severance of the title is by assignee or
sheriff. We may therefore disregard the bankruptcy
feature of the case, and address ourselves to the naked
question whether under a joint conveyance from hus-
band and wife, the purchaser will take the estate di-
vested of separate liens acquired against either, if any.
No case can be pointed to in our reports where the
exact question has been raised and met. We are there-
fore thrown back on general principles so far as appli-
cable to the peculiar features of this estate. We start
in the discussion with an admission which the case of
Fleek v. Zillhaver, supra compels, that the judgments
here obtained against the husband were liens. But
upon what? Certainly not upon the entirety that was
in the husband, for the entirety of estate was in the
wife equally with the husband, and being in its nature
indivisible, it would follow necessarily that any en-
cumbrance upon the estate of the one would rest upon
that of the other, a result which of course could not be
justified or allowed except as the inherent attributes of
the estate are to be wholly disregarded. There remains
to the husband a right of survivorship, by virtue of
which, in case he survive the wife, while taking no es-

tate, yet because the entirety in the wife is by her death extinguished, his entirety embraces every interest in the estate. Contingent though this ultimate divestiture be, the expectancy is nevertheless a vested interest, and as such may be the subject of lien. All possible titles, vested or contingent, in land, under our law may be taken in execution and sold provided it be a real interest, whether legal or equitable. "Accordingly," says TILGMAN, C. J., in Carkhuff v. Anderson, 3 Binn. 4, "it has been long settled that a judgment is a lien on every kind of equitable interest in lands. It is a lien on every kind of right vested in the debtor at the time of the judgment." The right to such a lien is not dependent alone on statutory authority. At common law judgments were not liens upon land, but the lien resulted from lands being subjected by statute to be taken in execution, and from this right the land was held bound from the date of the judgment. Our statutes with respect to liens simply enlarge and extend them. It was this contingent expectant interest in the husband that was in contemplation when in Fleek v. Zillhaver, supra, this court held that the judgment against the husband acquired a lien at its inception. Admitting then the lien on the expectant interest, the question occurs when is it enforcible? At once, or only upon the realization of the expectancy? A little reflection upon the nature of the estate by entireties should make it apparent, we think, that while the estate continues it is utterly impossible for either party, without the other joining, to sell or assign his or her interest therein, even the expectancy of survivorship. The rights of the parties are fixed by the deed of conveyance to them, and by that instrument each took an entirety made up of indivisible parts. Any alienation by one, the other not consenting, of any interest whatever in the estate, if allowed, would be an abridgment pro tanto of the rights of the other. By their joint act they admittedly have the right to sell

and dispose of the whole estate; by their joint act they may strip the estate of its attributes and create a wholly different estate in themselves; but neither can divest himself or herself of any part without in some way infringing upon the rights of the other. The wife has the right to initiate as well as the husband. Suppose she desire to sell the land—a right which is hers—and the husband consent, what does his consent amount to if he has parted with his expectancy of survivorship to a stranger? Such circumstance would operate to deny to the wife the enjoyment of an inseparable incident of ownership, the right of alienation. Now, stating it broadly but correctly, nothing can be taken in execution and sold as the property of a debtor except property over which the debtor has the right of disposition by sale or otherwise. If then the husband cannot sell or dispose of his expectancy of survivorship, it follows that it may not be taken in execution. By this reasoning we reach the conclusion that the lien on the expectant interest of the husband becomes enforcible only when the expectancy ripens into a realized fact; then execution is not upon an expectancy but upon an actual existing estate. Another unavoidable conclusion results which must prove fatal to the appellant's contention here. If the husband may not alien his right of expectancy, and if because of this the expectancy may not be taken in execution—since in either case it would be an appropriation of the wife's right of property in that it would deprive her of the right to sell with the husband's consent—for equal reason a judgment operating as a lien upon the husband's expectancy would be an interference with the wife's right of alienation with the consent of the husband, except as that lien is divested by such sale. The owner of such lien must hold it subject to its possible extinction in either of two events, the predecease of the husband, or the alienation of the estate by the joint act of the parties. The

efficiency of the lien depends upon the nonhappening of either.

The effect sought to be given the case of Fleek v. Zillhaver, supra, has made this discussion seem necessary. But for that case we might well have rested this on what we regard as the decided weight of authority in other jurisdictions touching the questions here directly involved. We attempt no discussion of these conflicting decisions. They may be found cited and reviewed in a very carefully prepared annotation in the case of Jordan v. Reynolds, Maryland Court of Appeals, reported in 9 L. R. A. (N. S.)—page 1026, where the following conclusion is expressed by the learned editor. "The weight of authority founded as we think upon the better reasoning, is that such acts (the reference being to enabling acts with respect to rights of property in married women) do not in any way effect estates by entirety, except that they deprive the husband of the right to the possession and enjoyment of the property held by himself and wife in this manner, to the exclusion of the wife. That such acts have the effect of freeing the wife's property from any liability to his creditors, and that, therefore, her rights to the possession and enjoyment of property held in common with her husband by entirety cannot in any way be interfered with by his creditors; and hence the entire property, during their joint lives, is free from judgment or execution lien directed against either of them?" In this conclusion we entirely concur, saving, however, whatever exception may be required to give effect as above indicated to the doctrine asserted in Fleek v. Zillhaver.

The decisions holding to a different view than that we here express would seem to rest largely upon considerations of policy; the governing consideration in each seeming to be that the exemption of the estate from executions and liens directed against husband or wife would be an invitation to fraud, and would operate

as a shield of protection against the just demands of creditors. And this view has been strongly pressed upon our attention in the present case. But fixed rules of law do not give way to expediency or policy. If they did, and the question here was one of policy, our conclusion would be the same; for as between the poli- cies suggested, we would incline to that which would prevent a husband's expectancy in cases like this from being huckstered about and made the subject of wager- ing contracts of dangerous character, rather than to one which would permit such traffic in order that creditors might have a security upon which they had no right to rely when they extended credit.

The learned court below adjudged the deed in this case from husband and wife sufficient to pass title free from the effect of the bankruptcy proceedings and the judgments against the husband, and free from any contingent interest or ownership therein by the said trustee in bankruptcy in the event of the bankrupt sur- viving his wife. In this the court was correct. The exceptions are overruled and the judgment is affirmed.